**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JUSTIN TYLER ETIER,**

      **Plaintiff,**

      **v.**                          **CASE NO.  22-3116-SAC**

**UNIFIED GOVERNMENT**
**OF WYANDOTTE COUNTY, et al.,**

      **Defendants.**


**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

      The Court finds that this matter is subject to dismissal for the reasons explained below. The Court further denies the Plaintiff's Motion to Appoint Counsel (Doc. 3) and Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4).

**I.  Nature of the Matter before the Court**

      Plaintiff is a pretrial detainee confined at the Wyandotte County Detention Center ("WCDC") in Kansas City, Kansas.  The plaintiff proceeds *pro se*.

      Plaintiff's Complaint (Doc. 1), while starting with the Court's approved form, includes another 40 handwritten pages that are often redundant and confusing.   Plaintiff makes general allegations about the conditions at the WCDC.  He claims the facility is in an advanced state of deterioration, unsanitary, outdated, understaffed, and overcrowded.  He also alleges there have been excessive lockdowns as a result of the lack of staff.

      Plaintiff further describes how he was injured when a bunk bed became detached from the wall and fell on him.  He alleges a failure to inspect the cells, that Defendants prevented him from

receiving proper treatment for his injuries, and that they were negligent in failing to get him to an emergency room or a specialist doctor.  (Doc. 1, at 26.)  He acknowledges that he received medical care but claims he should have been transferred to the emergency room.  Plaintiff further contends that he later contracted MRSA as a result of Defendants failing to exercise reasonable care to stop MRSA from spreading at the WCDC.

Plaintiff brings three counts.  In Count I (also referred to as Count C later in the document), Plaintiff alleges a failure to train medical and security personnel with respect to neurological injuries, infectious disease transmission, emergency responsiveness, and medical treatment in general.

In Count II (also referred to as Count A), Plaintiff alleges a failure to protect him from harm caused by the unsafe conditions at the WCDC.  He claims that defendants Patricks, Thaxton, McCollough, Soptic, the Unified Government, and the County Commissioners failed to act on knowledge of a substantial risk of serious harm to Plaintiff's health in violation of his Eighth Amendment rights.

In Count III (also referred to as Count B), Plaintiff alleges deliberate indifference to the risk of having security staff and medical staff who were not trained.  He further claims medical staff delayed care or refused to provide appropriate emergency care.

Plaintiff names the following defendants:  the Unified Government of Wyandotte County (the "UG"); the Board of County Commissioners of Wyandotte County, Kansas (the "Board"); Wellpath, LLC; Daniel Soptic, Wyandotte County Sheriff; David Thaxton, Warden of the WCDC; Charles Patricks, Major at the WCDC; Tracy McCollough, Captain at the WCDC; D. Dull, Wellpath Health Service Administrator; Wendy Torres, Nurse at the WCDC; and Crystal Walker,

Nurse at the WCDC.  Plaintiff seeks compensatory and punitive damages, as well as wide-ranging injunctive relief.  *Id*. at 5.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Does the Complaint state a constitutional claim?

When screening Plaintiff's Complaint, the first question is whether Plaintiff has stated a claim for the violation of a right secured by the U.S. Constitution.

#### 1.  Negligence

Plaintiff repeatedly refers to negligence and negligent conduct on the part of various defendants.  However, claims under § 1983 may not be predicated on mere negligence.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that inmate who slipped on a pillow negligently left on a stairway by sheriff's deputy failed to allege a constitutional violation); *see also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability").

To hold a defendant liable for an Eighth Amendment violation, whether based on deficient medical care or conditions of confinement, a plaintiff must show deliberate indifference on the part of each defendant: that the defendant *knew* of and disregarded an excessive risk to the plaintiff's health or safety or *knew* about the particular condition and *knew* it posed a substantial risk of harm to the plaintiff yet failed to take reasonable steps to alleviate that risk.  *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).  This is a significantly more difficult standard for a plaintiff to meet than negligence.

#### 2.  Conditions of Confinement

A pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, and "the Eighth Amendment standard provides the benchmark for such claims."  *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).  "[A] pretrial detainee

[must] be provided 'humane conditions of confinement by ensuring the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee his safety.'" *Routt*, 764 F. App'x at 770 (citing *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (ellipsis, brackets, and internal quotation marks omitted)); *see also Kelley v. Wright*, No. 2:19-CV-02278-JAR-JPO, 2019 WL 6700375, at *10 (D. Kan. Dec. 9, 2019). However, "jail conditions may be restrictive and even harsh without violating constitutional rights." *Id.* (citing *Ledbetter*, 318 F.3d at 1188 (internal quotation marks omitted)). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

To establish liability, a pretrial detainee must show: "(1) the official[ ] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious." *Routt*, 764 F. App'x at 770 (citing *Ledbetter*, 318 F.3d at 1188 (citation, brackets, and internal quotation marks omitted)). The plaintiff has to establish "deliberate indifference." The deliberate indifference standard includes both an objective and subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Martinez*, 430 F.3d at 1304. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer*, 511 U.S. at 832.

With regard to the subjective component, the plaintiff must prove that the defendant acted with a culpable state of mind. *Farmer*, 511 U.S. at 834, 837 ("[A] prison official may be held

liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *McBride v. Deer*, 240 F.3d 1287, 1291 (10ᵗʰ Cir. 2001); *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) (Deliberate indifference "requires both knowledge and disregard of possible risks.").  It is not enough to establish that the official *should have* known of the risk of harm.  *Farmer*, 511 U.S. at 837–38; *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10ᵗʰ Cir. 1998).

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id.*; *Barney*, 143 F.3d at 1311.  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations. . . may meet the standard despite a shorter duration."[1]  *Id.*

On the other hand, the court is mindful of the Supreme Court's mandate that the judicial branch accord deference to prison authorities in the running of prisons and jails, particularly when a state prison system is involved.  *See Turner v. Safley*, 482 U.S. 78, 85 (1987).  "[M]aintaining

---

[1]      For example, A "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."  *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).  "Courts have repeatedly held that similar and far worse conditions fail to state a claim because of the brief nature of the incarceration."  *Barney*, 143 F.3d at 1311 (citing *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994)(deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993)(eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); Harris v. Fleming, 839 F.2d 1232, 1235–36 (7th Cir. 1988)(five day stay in "filthy, roach-infested cell" not unconstitutional); *Ogbolu v. McLemore*, 107 F.3d 21, *2 (10ᵗʰ Cir. 1997)).

internal security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

"Overcrowding itself is not an unconstitutional condition, and becomes actionable only if it leads to deprivation of food, proper sanitation, or medical care, or where it is accompanied by dangerous conditions." *Rhodes*, 452 U.S. at 349. Courts have held that there is no constitutional violation for mere triple-celling or triple-bunking pretrial detainees. *See, e.g., Rhodes*, 452 U.S. at 348 (holding that even though a jail housed 38% more inmates than its design capacity, "[t]he double celling made necessary by the unanticipated increase in prison population" did not violate the Eighth Amendment because no deprivation of "essential food, medical care, or sanitation" occurred); *Hubbard v. Taylor*, 538 F.3d 229 (3rd Cir. 2008)(triple-celling was rationally related to prison officials' legitimate government interest); *North v. White*, 152 F. App'x 111 (3rd Cir. 2005)(finding no Eighth Amendment violation where, due to a temporary influx of inmates, facility resorted to triple-celling of one-third of inmates for a month, since facility was otherwise well maintained; and ventilation, light, sanitation, and food met applicable minimal standards); *see also Bell*, 441 U.S. at 534 (the fact that the conditions of pretrial detention may interfere with a person's desire to live as comfortably as possible and with as little restraint as possible dose not convert the conditions in the jail facility to "punishment" within the constitutional sense)). Plaintiff must allege facts showing some plausible adverse effects from the complained of conditions. *See Dittmeyer v. Whetsel*, 91 F. App'x 111, 119 (10th Cir. 2004) (plaintiff did not show how overcrowding injured him).

The frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered is assessing whether the condition is sufficiently serious to

support a constitutional claim. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). More fundamentally, Plaintiff must show that each defendant was personally responsible for the conditions under which Plaintiff was held in the jail. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Plaintiff's generalized allegations that the WCDC is in an advanced state of deterioration, unsanitary, outdated, understaffed, overcrowded, and imposing "excessive" lockdowns do not state a claim. Plaintiff does not include sufficient detail about the circumstances, nature, and duration of his exposure to each alleged condition or demonstrate how each condition injured him. For instance, his claim that the WCDC is at nearly twice the capacity it was originally designed to house does not, in and of itself, constitute a violation of Plaintiff's rights.

Plaintiff also includes the more specific claim that the poor condition of the WCDC resulted in the upper bunk falling on him. However, Plaintiff does not allege that any defendant knew the bunk was unsafe prior to the incident. While someone may have been *negligent* in inspecting and maintaining the facility, Plaintiff does not state a constitutional claim for deliberate indifference.

Plaintiff also asserts a conditions of confinement claim related to contracting MRSA.  He claims that he spent six days in a segregation cell without running water and was not permitted to shower or leave the cell for three of the six days because of lockdowns due to COVID and lack of staff.  He asserts that, as a result, he became infected with MRSA.

The Complaint does not include specific facts showing that the conditions as alleged by Plaintiff posed a substantial risk of serious harm or that any defendant was aware of the specific risk and disregarded it.  He alleges that Defendants Thaxton and Wellpath had knowledge of MRSA cases at the WCDC and should have foreseen the danger of leaving infected inmates among noninfected inmates and of lockdowns without adequate showers or the ability to wash hands. MRSA may qualify as serious harm, but was housing Plaintiff in that specific cell under the described conditions subjecting him to substantial risk of contracting MRSA?  If so, were any defendants aware of that risk yet disregarded it?  Plaintiff makes general, conclusory allegations that are not sufficient to state a claim under the Eighth Amendment.

### 3.  Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments.[2]  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  As discussed above, the "deliberate indifference" standard has two components: "an

---

[2]   The protections provided by the Eighth Amendment do not directly apply to pretrial detainees, such as Mr. Etier. *See Bell*, 441 U.S at 535 n.16.  However, under the Fourteenth Amendment, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Shue v. Laramie Cty. Det. Ctr.*, 594 F. App'x 941, 944–45 (10th Cir. 2014) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)).

objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez*, 430 F.3d at 1304.  In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer*, 511 U.S. at 834.  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

In this case, Plaintiff has difficulty with both the objective and the subjective components. He complains of the medical care he received after he was injured by the falling bunk.  Plaintiff states that he was bleeding from a small laceration, disoriented, experiencing neck pain, and his ears were ringing.  He used the intercom to report the incident and say he needed to go to the hospital.  According to the Complaint, the officer who answered the intercom did not respond appropriately, but then Officer Potter promptly appeared, called code, and McCullough arrived and photographed the room and Plaintiff.  Another officer and Nurse Walker arrived soon after. Walker took Plaintiff's vital signs and asked what happened and where he was hurting.  He

indicated his forehead and the base of his neck.  According to the Complaint, Walker stated he probably just had a light concussion or neck strain and a hematoma and some scratches on his forehead.  Plaintiff states that he reported being nauseous and dizzy, and McCullough sent Potter to get a wheelchair.  Despite asking to be seen by a doctor, Walker sent Plaintiff to an isolation cell with 24-hour lighting.  She gave him some Tylenol and an ice pack and checked his vitals, then went off shift.   Plaintiff couldn't sleep because lying down was painful.  He made several attempts to get more medical attention and was told to submit sick calls.

Plaintiff disagrees with the defendants' assessment and treatment of him.  He believes the defendants should have acted with more urgency, asked about tetanus, stabilized his cervical spine with a c-collar and/or backboard rather than putting him in a wheelchair, and sent him to the hospital.

An inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind."  *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.");  *Wilson*, 501 U.S. at 297.  Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for

an Eighth Amendment claim.).  Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–106 (footnote omitted).  The prisoner's right is to medical care-not to the type or scope of medical care he personally desires.  A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983.  *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).

Plaintiff also complains that even though his symptoms did not improve, the medical staff did not provide additional treatment for eight days.  However, delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm.  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993).  In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006).  Plaintiff does not claim he suffered additional substantial harm as a result of the delay.

As for the subjective prong, Plaintiff's allegations may demonstrate that Walker or another defendant was negligent but do not demonstrate that any defendant knew of and disregarded an excessive risk to Plaintiff's health or safety.  He was conscious, talking, able to summon help, and

had a small cut on his forehead.  The need for further medical attention was not "so obvious that even a lay person would easily recognize [it]."  *Ramos*, 639 F.2d at 575.

Plaintiff's assertion that he received constitutionally inadequate medical care is subject to dismissal for failure to state a claim.  Plaintiff's allegations indicate that he was furnished medical care during the relevant time frame.  They also indicate that his claim amounts to a difference of opinion with the diagnosis of his injury by medical professionals and the treatments he has been provided.  Such allegations do not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment; and are, at most, grounds for a negligence or malpractice claim in state court.

### 4.  Failure to Protect

Plaintiff frames one of the counts in his Complaint as "failure to protect."  However, a failure to protect claim typically refers to a failure to protect an inmate from harm at the hands of another prisoner. *See Farmer*, 511 U.S. at 833–34.  Plaintiff has described no incident where he was harmed by another detainee.  Instead, he alleges harm from the conditions of his confinement, which is discussed above.  Both conditions of confinement claims and failure to protect claims, along with claims of constitutionally inadequate medical care, are analyzed under the Eighth Amendment deliberate indifference standard.

### B.  Defendants: Failure to Train

One of Plaintiff's recurring themes in the Complaint is failure to train.  He argues that the UG or the Wyandotte County Board of Commissioners or the Sheriff should have had a specific policy addressing inmates who suffer head injuries and the training program used by the Sheriff or Wyandotte County was deficient in regards to responding to emergency medical situations.

To impose § 1983 liability on the county and its officials for acts taken by its employee, Plaintiff must show that the employee committed a constitutional violation and that a county policy or custom was "the moving force" behind the constitutional violation. *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *see Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978)). The Supreme Court explained that in *Monell* they decided "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," and "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989).

As explained above, Plaintiff has not stated a claim for a constitutional violation, but if he had, he has not alleged that a policy of the county or sheriff's department was the "moving force" that caused the violation. Plaintiff instead argues that a lack of policy or a failure to train caused the alleged violation. "To prevail under the failure-to-train approach, a plaintiff must show that the municipality made a 'deliberate or conscious choice' to not train its employees, and that the municipality was deliberately indifferent to its inhabitants' constitutional rights. *Manzanares v. Roosevelt Cnty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1300 (D.N.M. 2018), citing *City of Canton v. Harris*, 489 U.S. 378, at 388-89 (1989), and *see Collins v. City of Harker Heights*, 503 U.S. 115, 123-24 (1992). The flaws in policy or training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390.

The Complaint contains only conclusory allegations that there should have been a policy or that if there was a policy, there was not adequate training conducted. Plaintiff does not meet

the "rigorous standards of culpability and causation" required to hold a municipality liable for the actions of its employees. *See Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 405 (1997).

### C.  Request for Relief

Plaintiff mentions seeking punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).   Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.  Any request for punitive damages is subject to dismissal.

## IV.  MOTIONS

### A.  Motion to Appoint Counsel (Doc. 3)

Plaintiff has filed a motion to appoint counsel (Doc. 3).  He claims he is unable to afford counsel, his claims are complex, and he has limited access to legal materials and limited knowledge of the law.  The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*,

461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not overly complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  Considering these factors, the Court denies the motion.

### B.  Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4)

Plaintiff asks the Court to enter an order setting a cap on the population of the WCDC, requiring Defendants to stop using "dangerously defective equipment, requiring more thorough cleaning of the WCDC, prohibiting the use of showers as a "privilege," prohibiting defendants from "continuing to operate [the WCDC] in a manner that would be inconsistent with professional judgment," and requiring Defendants to provide Plaintiff with further treatment and diagnostic testing to detect the presence of MRSA, respiratory infection, neurological disorder, sepsis testing not limited to urinary analysis, blood differential, CBC, set rate, throat culture, sputum sample, spinal tap, echocardiogram, MRI, and CT scan.  (Doc. 4, at 1-2).

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the

issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[3] Plaintiff is

---

[3] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and

given time to file a complete and proper amended complaint in which he concisely (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **August 26, 2022,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **August 26, 2022,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 3) and Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4) are **denied**.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

---

instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (22-3116-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

**IT IS SO ORDERED**.

**Dated July 27, 2022, in Topeka, Kansas.**

<u>**S/ Sam A. Crow**</u>
**Sam A. Crow**
**U.S. Senior District Judge**