IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN TYLER ETIER,

    *Plaintiff,*

vs.

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY, KANSAS,

    *Defendant.*

Case No. 22-CV-3116-EFM-KGG

**MEMORANDUM AND ORDER**

Plaintiff Justin Tyler Etier brings suit against Defendant Unified Government of Wyandotte County, Kansas ("Wyandotte County"). He asserts a negligence claim and a claim under 42 U.S.C. § 1983. Defendant has filed a Motion to Dismiss (Doc. 26) arguing that the claims against it should be dismissed because Plaintiff fails to adequately state a municipal liability claim against Wyandotte County. For the reasons stated in more detail below, the Court denies the motion.

    **I.**    **Factual Background**

Plaintiff originally filed this action pro se. After the Court issued a Show Cause Order as to why Plaintiff's Complaint should not be dismissed,[1] Plaintiff obtained counsel, and his counsel

---

[1] This case was previously assigned to Judge Crow.

filed an Amended Complaint. In this Amended Complaint, he named Wyandotte County and the Wyandotte County Sheriff's Department ("WCSD") as Defendants.

He alleges that he was in the custody of the WCSD and detained in the Wyandotte County Adult Detention Center ("WCDC"). On December 22, 2021, Plaintiff was hurt by a falling bunk bed. He states that he repeatedly requested additional medical treatment and testing to diagnose the injuries to his head, but he was denied treatment. In addition, Plaintiff alleges that he frequently complained about the general abhorrent conditions of the WCDC, such as deplorable and unsafe sanitary conditions, defective plumbing, poor ventilation, restrictions on shower privileges, and other issues. Plaintiff also complained to WCDC personnel about its failure to regularly inspect cells for dangerous conditions, the lack of available beds in relation to the number of inmates housed, the overcrowding and lack of space, the general and overall air of decay caused by recurring plumbing issues creating raw sewage, and the danger and filth throughout the facility. Plaintiff contends that these conditions led to Plaintiff developing a severe case of Methicillin-resistant Staphylococcus Aureus ("MRSA") while in WCDC.

Plaintiff asserts a claim for negligence for the bunk bed incident, and he asserts a claim pursuant to 42 U.S.C. § 1983 for violation of his due process rights based on a failure to provide sanitary conditions. He asserts that Defendant had an official policy or custom of failing to maintain the WCDC. Specifically, he asserts that Defendant's policies and practices in housing too many prisoners, failing to adequately staff the facility, failing to adequately maintain plumbing and plumbing fixtures, and failing to adequately maintain inmate pods led to hazardous mold, flooding, and unsanitary conditions.

After Plaintiff filed his Amended Complaint, the Court found, at the initial screening stage, that Plaintiff adequately set forth his claim. However, the Court determined that the WCSD was

not a suable entity under § 1983. Thus, the WCSD was dismissed from the case, leaving only Wyandotte County as a defendant. The case was then reassigned to the undersigned.

Defendant then filed a Motion for More Definite Statement. Magistrate Judge Gale denied Defendant's motion. He found that the Amended Complaint contained sufficient information for Defendant to provide an answer, particularly because the Court had already issued an order specifically finding that Plaintiff could proceed against Wyandotte County.

Defendant is now before the Court with its Motion to Dismiss.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8]

### III.   Analysis

Defendant asserts that Plaintiff cannot state a claim for municipal liability under § 1983 because Wyandotte County has no ability to implement or execute policies and customs to regulate the operations of the Sheriff's office and WCDC. Plaintiff does not directly respond to this argument and instead contends that he adequately sets forth a claim for *Monell* liability.

In *Monell v. Department of Social Services*,[9] the United States Supreme Court stated that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[10] To state a claim for municipal liability under § 1983, a plaintiff must allege "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[11] "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[12] "[W]hen a municipal-liability claim is premised on the municipality's systemic

---

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] 436 U.S. 658 (1978).

[10] *Id.* at 691.

[11] *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Cmmr's*, 973 F.3d 1022, 1034 (10th Cir. 2020)).

[12] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

failures, no single individual defendant need be found liable, [but] the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights."[13]

Defendant asserts that Kansas law is "replete with authority" that Wyandotte County does not have the ability to dictate policy or custom relative to the Sheriff's office or the operation of the WCDC. Defendant cites to several cases for this proposition, but Defendant fails to draw a distinction between the county and the county board of commissioners. These cases discuss the *county board of commissioners*' ability to implement policies and liability.

For example, Defendant relies on the Kansas Supreme Court decision of *Board of County Commissioners of County of Lincoln v. Nielander*.[14] In that case, the court considered whether the board of county commissioners had the power to fire a county sheriff's deputy.[15] The Kansas Supreme Court found that the sheriff was "not a subordinate of the board of county commissioners" but was instead "a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board."[16] Thus, the court found that the county sheriff and the board of commissioners were of equal positions, and the board of county commissioners could not usurp the county sheriff's powers or responsibilities.[17]

---

[13] *Johnson v. Davis Cnty.*, 2022 WL 830202, at *3 (10th Cir. 2022) (internal quotation marks and citations omitted).

[14] 275 Kan. 257, 62 P.3d 247 (2003).

[15] *Id.* at 251.

[16] *Id.*

[17] *Id.* at 252-54.

In this case, Plaintiff filed suit against Wyandotte County—not the Wyandotte County Board of Commissioners. And although a county board of commissioners may not have the power to dictate the policies or have oversight over the sheriff's department, it does not follow that the county cannot be held responsible for the sheriff's actions. Indeed, in *Blume v. Meneley*,[18] the District of Kansas discussed the *Nielander* case and concluded that "the county and the board are not one and the same," and "the court's holding in *Nielander* is inapplicable to defendant Shawnee County as a whole."[19] The court noted that the county sheriff's department was the individual department of the county, and for the county to be liable for the actions of the sheriff's department, the actions "must have been taken pursuant to an established policy or custom of the county."[20] The question, therefore, was whether a jury could find "that the Sheriff's Department used this policy to violate [the plaintiff's] rights and that defendant [] County had adopted this policy."[21]

In this case, the suit is based on the conditions of the detention center of Wyandotte County (WCDC). The Amended Complaint alleges that the WCSD is responsible for the day-to-day operations of the WCDC. In addition, there are allegations that the WCSD's and Wyandotte County's policies and practices in housing too many prisoners, failing to adequately staff the

---

[18] 283 F. Supp. 2d 1171 (D. Kan. 2003).

[19] *Id.* at 1175.

[20] *Id.* at 1176.

[21] *Id.*; *see also Seifert v. Unified Gov't of Wyandotte Cnty.*, 2012 WL 2448932, at *7 (D. Kan. 2012) (noting the distinctions between the responsibilities and powers of a sheriff's office and the county board of commissioners and finding that the plaintiff could support his *Monell* claims "only to the extent that he demonstrates that the Sheriff's Office adopted or employed the complained-of [] policies" and "[t]o the extent that the plaintiff seeks to establish liability on the part of the Unified Government for the actions of the Wyandotte County Sheriff's Department . . . he must demonstrate a policy of the Sheriff's Department."); *Lee v. Wyandotte Cnty.*, 586 F. Supp 236, 238-39 (D. Kan. 1984) (dismissing the Wyandotte County Board of Commissioners because they could not be held responsible for the Wyandotte County Sheriff's Department violations because the board had no authority over the sheriff's department but refusing to dismiss Wyandotte County from the suit because questions remained regarding Wyandotte County's liability).

facility, failing to adequately maintain plumbing and plumbing fixtures, and failing to adequately maintain inmate pods led to hazardous mold, flooding, and unsanitary conditions and Plaintiff contracting MRSA.  Accordingly, although a county board of commissioners has no authority to implement sheriff's office policies and cannot be held liable for a sheriff's departments allegedly unlawful acts, the county "may be liable under § 1983 [] if an official custom or policy resulted in a violation of plaintiff's constitutional rights."[22]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 26) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 16th day of May, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[22] *Kinsey v. Wyandotte Cnty. Unified Gov't*, 2020 WL 7480391, at *2 (D. Kan. 2022); *see also Seifert*, 2012 WL 2448932, at *7 (noting that the plaintiff could support his *Monell* claims and "establish liability on the part of [Wyandotte County] for the actions of the Wyandotte County Sheriff's Department" by demonstrating a sheriff's department policy); *Blume*, 283 F. Supp. 2d at 1176 (finding that for purposes of *Monell* liability that "a reasonable jury could find that the Sheriff's Department used this policy to violate plaintiffs' rights and that defendant [] County had adopted this policy.").